WILLIAM H. PARSONS *vs.* THE CITY OF BANGOR.

*Domicil.*

To constitute a change of domicil there must be a concurrence of the intention to make, and the fact of making, such change.

On the 30th of March, a person, who had previously disposed of the greater portion of his furniture and his other personal property, paid his bill at the public house in Bangor, at which he had been boarding with his wife for several years, left that city and upon the first day of April arrived at New York, engaged a boarding place and went into business there in pursuance of an agreement entered into some time before; it being arranged that his wife should follow him as soon as a boarding place was obtained. *Held*, that such person was not liable to taxation in Bangor on the first day of April.

The acts and intentions of the wife do not affect the domicil of the husband.

ON REPORT.

ASSUMPSIT for money had and received to recover a poll and personal tax amounting to $439.80, assessed to the plaintiff by the defendant, for the year 1867, and paid by plaintiff on arrest therefor.

The facts are fully stated in the opinion.

*F. A. Wilson,* for plaintiff.

*H. C. Goodenow,* for defendants.

APPLETON, C. J. The plaintiff sues to recover a sum of money paid under arrest to discharge a tax, which he says was unlawfully assessed upon his poll and personal property in 1867, after he had ceased to be an inhabitant of Bangor. It was admitted that the tax was legally assessed and collected if plaintiff was an inhabitant of Bangor April 1, 1867.

At the trial he rested his case upon his own testimony, which in substance was as follows: that he now resides in Brooklyn ; that

he resided in Bangor from 1835 to 1867, boarding the last four years of his residence there, with his wife, at the Bangor house, where the rooms they occupied were partially furnished by him ; that he resigned his office as cashier of a bank in the city about the middle of March, 1867, in pursuance of an arrangement made the month preceding to take effect April 1st, to go into business in New York City as one of a firm of which his brother-in-law, a resident of Medford, Mass., was to be a member; that he sold a lot in Bangor upon which he had once intended to build, but had not ; that he disposed of all his real estate in the city ; that he sold his bank stock and vessel property, and some of the remnants of furniture, which he had stored when he gave up housekeeping in 1863 ; that he made a conditional sale of his horse because he did not know whether he should want to take him or not, and a like conditional sale of his carriage ; that he afterwards took them back and had them sent to Massachusetts in the course of the summer. He says at first that he sold all his furniture, that he did not want to move, before going himself, as hereinafter stated, but afterwards admits that some of it might have been sold afterwards. What was finally removed (bedding, pictures, books, and some few articles of furniture) was sent sometime in the summer, not to New York but to Lexington, Mass., where he fixed his residence the following autumn.

On Saturday morning March 30, he settled his bill at the Bangor House, and, as he says, surrendered his rooms, but said to the landlord that if his wife could retain them for a few weeks she would like to do so ; and taking with him nothing but his wearing apparel he started for New York where he arrived Monday morning, April 1, 1867, engaged board and commenced business the same day. He has never since lived in Bangor or in Maine. He was to pay a certain price for his own board and another and difent price when his wife, whom he left behind in Bangor, to remain until the boarding place was engaged, should arrive. She never did go to live in New York. His brother-in-law died the same week and that broke up the business arrangement. The plaintiff's

Parsons *v.* City of Bangor.

wife went to Massachusetts to attend the funeral a week after her husband left Bangor, and was then informed by her husband that it was uncertain under the circumstances whether he remained in New York, and she returned to Bangor in a week or two, as he says, " to complete her arrangements for removal, with his knowledge and approval." His interest in the New York business ceased in June. The plaintiff was back and forth between Boston and New York during the summer and his wife remained in Bangor so far as appears, retaining their old quarters at the Bangor House, until they finally settled at Lexington that year. Having testified to these facts upon his examination in chief and cross examination, on being re-examined by his counsel, he says "on April 1st, I had no intention but that I should live in New York, and when I left here the agreement was that I should live in New York." The plaintiff stopping here, the counsel for defendants was proceeding with his opening statements to the jury, when the presiding judge interposed with the remark that he " should instruct the jury that if they find that the plaintiff was actually present in New York on the 1st day of April with the intention of remaining and living there as testified to by plaintiff, no matter under what circumstances or how long it might be shown plaintiff's wife remained in Bangor, after April 1st, the plaintiff was not legally taxable as an inhabitant of Bangor on that day, and would be entitled to recover in this action."

By R. S., c. 6, § 13, personal property is " to be assessed to the owner in the town where he is an inhabitant on the first day of April in each year."

In *Briggs* v. *Rochester,* 16 Gray, 337, it was decided that an inhabitant of a town within the commonwealth, who before the first of May has left the commonwealth with the intention of never returning, and taking up his abode in a town in another State, and is on the first of May in another town in the State, is not under the R. S., c. 7, § 9, taxable in the Commonwealth on the first day of May, although he has not yet acquired a domicil in such other State. In *Colton* v. *Longmeadow,* 12 Allen, 598, it was held that when

a person had abandoned his domicil in Massachusetts and had gone beyond its limits, not intending to return there to reside, but to take up his residence in another State, which he did, he was not taxable in Massachusetts.

These cases are directly and decisively in point. If the testimony of the plaintiff was all the evidence in the case and was believed, can there be any question that the plaintiff had ceased to be an inhabitant of Bangor on the 1st of April, 1867? He had sold his .property to a great extent; he had formed a business connection in New York; he left Bangor with the intention of abandoning it and had removed and was at New York with the intention of remaining and living there, on .the 1st of April, 1867.

To constitute a change of domicil there must be the intention so to change and the fact of such change. Here both concur. The plaintiff was absent from Bangor with the intention of abandoning it as a place of residence. He was present in New York not merely with the intention of establishing that as his place of residence, but he had removed his funds to that place, had formed a connection in business there, had provided a place for his wife, and had done all a man could do to change his residence. In *Hampden* v. *Levant*, 59 Maine, 557, the pauper did not leave with any intention of abandoning Hampden as a place of residence, but while absent he formed the intention of abandoning it and establishing himself elsewhere, and the court held there was a change of residence.

It is to be observed no evidence was offered or excluded. No ruling was made as to the effect of any possible evidence which might be offered.

If, then, the plaintiff's testimony was true and not contradicted, can there be any doubt that he was not liable to assessment and taxation.

Now, the instruction was that if the jury should find that the plaintiff was actually present in New York on April 1, 1867, with the intention of remaining and being there as testified by him, no. matter under what circumstances, or how long it might be

shown plaintiff's wife remained in Bangor after April 1st, the plaintiff was not taxable as an inhabitant of Bangor on that day and would be entitled to recover in this action.

The instruction assumes the finding by the jury the truth of all the testimony of the plaintiff, and that there was, on the first day of April, 1867, the then-existing intention on his part of being and remaining in New York as a resident.

If so, the question is, whose will determines the domicil or residence? Cannot the husband by his will and acts change his domicil against and contrary to the will and wishes of his wife, such being his intention? In other words, whose will and intention are to govern. If the husband's are to control, then it matters not, his will and acts controlling, that he is married or not. Suppose the wife remained six or sixty days in Bangor, with or without his consent, how can that affect the residence of the husband if he has abandoned his residence here with the intention of not returning, and has gone to and is in New York with the intention of there being and remaining. Suppose the wife declined to leave Bangor and remained there permanently, refusing to go to New York and live with her husband; does that make him an inhabitant of Bangor against his will, when he is absent therefrom with no intention of returning, and is in fact being and residing elsewhere with the intention of there so remaining?

What effect the wife's remaining and the circumstances under which she might remain would have on the credibility of the plaintiff's testimony, is not the question. If it would have been to render the plaintiff's testimony doubtful, then the ruling of the judge would not have applied, for only in case the jury should find the facts true as stated by the plaintiff, was the remark applicable.

The defendants not expecting nor offering to change, modify, or contradict the plaintiff's testimony, voluntarily submitted to a default. It is obvious, therefore, that the only question is whether the plaintiff has made a case which, uncontradicted, entitles him to recover, and unquestionably he has. If the defendants had doubted the truth of any thing testified to by the plaintiff, or that they

could modify or change the facts stated by him, or the inferences to be drawn therefrom, they were at liberty so to do. They have been deprived of no rights and have no ground of complaint. They voluntarily consented to a default upon the plaintiff's testimony, which they did not attempt or offer to contradict; and in so doing they acted wisely. *The default to stand.*

CUTTING, KENT, DANFORTH, and VIRGIN, JJ., concurred.