Riley *v.* The Western Union Telegraph Co.

---

# RILEY *v.* THE WESTERN UNION TELEGRAPH COMPANY.

INJUNCTION.—*Illegal Tax.*—An action will lie to enjoin the collection of taxes assessed without authority of law.

TAX.—*Foreign Corporation.*—*Statute Construed.*—The act to provide for a uniform assessment of property, Acts 1872, p. 57, does not contain any provi-

sion in relation to the manner of assessing the capital stock of foreign corporations.

SAME.—*Stock of Foreign Telegraph Corporation.*—The capital stock of a foreign telegraph company owning and operating a line of telegraph in this State can not be assessed under the provisions of said act.

From the Marion Superior Court.

*L. Barbour* and *C. P. Jacobs*, for appellant.

*J. E. McDonald* and *J. M. Butler*, for appellee.

WORDEN, J.—This was a complaint by the telegraph company against the appellant, to enjoin the collection of taxes assessed upon the capital stock of the company. The taxes. are claimed to have been assessed without the authority of law.

It appears from the complaint, that the plaintiff is a foreign corporation, existing under the laws of the State of New York, and not under any law of the State of Indiana; that she has a capital stock of about forty million dollars, with property in this State of the aggregate value of more than one hundred and fifty thousand dollars, and eight thousand six hundred and twenty-eight miles of telegraph lines in the State, three hundred and thirty-four of which are in Marion county; that the State Board of Equalization, assuming that eight hundred thousand dollars was the fair proportion for the State of the capital stock of the company, ordered an assessment upon that amount, less the tangible property of the company, to be apportioned to the several counties, etc.; that the amount apportioned to Marion county is something more than thirty-one thousand dollars, on which, in addition to the tangible property of the company, taxes have been assessed, which the treasurer is about to collect, etc.

A demurrer to the complaint for want of sufficient facts was overruled, and exception taken. Final judgment for the plaintiff enjoining the collection of the taxes assessed upon the capital stock of the company.

On appeal to the general term, the judgment rendered at special term was affirmed. The defendant below appeals to· this court.

Riley *v.* The Western Union Telegraph Co.

If the taxes were assessed without authority of law, there can be no doubt, so far as the law of Indiana is concerned, that an action will lie to enjoin their collection. This has been held so often in this State, however it may be elsewhere, that reference to the cases is deemed unnecessary. We therefore proceed to the main question. Can the capital stock of a telegraph company organized and existing under the laws of another state, and not under any law of this State, and doing business here only on the principle of comity, be taxed to the corporation in this State under any existing law of the State?

The question is not one of power, but whether such power, assuming it to exist, has been exercised by the legislature.

The third section of the act to provide for a uniform assessment of property, etc., (Acts 1872, p. 57) provides, that "all real property within this State, and all personal property owned by persons residing in this State, whether it is in or out of this State, and all personal property within this State, owned by persons not residing within this State, subject to the exceptions hereinafter stated, shall be subject to taxation."

By this section, all real and personal property situate in this State, and all personal property situate elsewhere but owned by persons residing in this State, subject to the exceptions, is made subject to taxation.

. By the fifth section, the terms "personal estate" and "personal property" are made to include, amongst other things, "all bonds or stocks, whether of bodies politic or corporate," and "the shares of stock of incorporated companies and associations organized under any law of this State or the United States."

By the fourth subdivision of section 12, in relation to the valuation of personal property, provision is made for the valuation of the capital stock of all companies and associations now or hereafter created under the laws of this State, including the franchise, by the State Board of Equalization.

VOL. XLVII.—33

Sections 84 and 85 of the act, which seem to be relied upon chiefly by the appellant, are as follows:

"Sec. 84. Any person, company, or corporation, using or operating a telegraph line in this State, shall annually, in the month of April, return to the Auditor of State a schedule or statement, as follows:

"1st. The amount of capital stock authorized, and the number of shares into which such capital stock is divided.

"2d. The amount of capital stock paid up.

"3d. The market value, or if no market value, then the actual value of the shares of stock.

"4th. The total amount of all indebtedness, except current expenses, for operating the line.

"5th. The length of line operated in each county, and the total in the State.

"6th. The total assessed valuation of all its tangible property in this State.

"Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the Auditor of State, and with reference to the amounts and values, on the first day of April of the year for which the return is made.

"Sec. 85. The Auditor of State shall annually, on the meeting of the State Board of Equalization, lay before said board the statement or schedule herein required to be returned to him; and said board shall assess the capital stock of such telegraph company, in the manner hereinafter provided. The county auditor shall compute and place upon the tax duplicate all taxes for which said property is liable, and the county treasurer shall collect the taxes charged against said property, and pay over and account therefor in the same manner as other taxes are collected and accounted for."

By this section, it is seen that the Board of Equalization is required to assess the capital stock "in the manner hereinafter provided." The only provisions thereinafter found, which have any bearing on the subject, are contained in sec-

tions 290, 291, and 292. By section 290 it is provided, amongst other things, as follows:

"In addition to equalizing the assessments of real property, as in this act provided, it shall be the duty of said State Board of Equalization to annually assess the capital stock of each company or association, respectively, now or hereafter incorporated under the laws of this State, in the manner hereinbefore in this act provided."

We suppose the term "hereinbefore" may have referred to the provisions of the fourth clause of section 12 herein previously noticed. This may be sufficient to connect that clause of section 12 with section 85, so as to furnish the manner of making the assessment. But neither section 12 nor 85, nor, indeed, any other section of the statute which we have seen or to which our attention has been called, contains any provision in relation to the manner of assessing the stock of foreign corporations. Both sections 12 and 290 have reference exclusively to domestic corporations. Thus there would seem to be no provision made for the manner of assessing the stock of foreign corporations; and this would seem to be a pretty strong reason for inferring that the legislature did not intend by sections 84 and 85 to assess the capital stock of foreign telegraph companies. The other provisions of sections 290, 291, and 292 do not throw much light on the question. The assessments made by the Board of Equalization other than upon the capital stock of railroad and telegraph companies, are to be certified by the Auditor of State, under the direction of the board, to the respective county auditors; while "the aggregate amount of capital stock of railroad or telegraph companies assessed by said board shall be distributed proportionately by said board to the several counties in like manner that the property of railroads denominated 'railroad track' is distributed."

It may be further observed that by section 59 "all other companies and associations incorporated under the laws of this State" are required to return to the proper assessor a sworn statement containing, amongst other things, "the amount of

capital stock paid up," as also the amount authorized, and the number of shares into which it is divided.

The language of section• 84, taken by itself, is broad enough to cover foreign as well as domestic telegraph companies; but as section 85, which authorizes the assessment, refers to some subsequent part of the statute for the manner of the assessment, and as there is no provision whatever in relation to the manner of assessing, by the Board of Equalization, the capital stock of foreign, but only domestic corporations, we are of opinion that the legislature did not intend, by sections 84 and 85, to assess the capital stock of foreign, but only domestic telegraph companies. We are strengthened in this opinion by the spirit and policy of the entire statute, which contemplates, as we think, the theory of taxing to corporations the capital stock of domestic corporations only. Why should the legislature have intended to tax the capital stock of foreign telegraph companies to such companies, and not the capital stock of the numerous other foreign corporations that are permitted by comity to transact business in the State? The legislature have not, as we think, clearly evinced an intention to make such discrimination, and we are not compelled by the language employed to impute to that body such intent.

If this tax can be upheld at all, there is no legal reason that we can see why it might not have been assessed upon the whole forty millions of capital as well as upon the eight hundred thousand dollars. If the capital stock of the corporation is to be taxed in Indiana, no reason is perceived why it might not be in every other state where the appellee has telegraphic lines. The fact that the legislature made no provision for apportioning the amount of the capital stock to be assessed in such case is a strong reason for inferring that it was not the intention to tax it at all.

. We are of opinion, for these reasons, that the tax can not be sustained. We are supported in this view by a late decision of the Supreme Court of Illinois, in the case of *The Western Union Telegraph Company* v. *Leib*, not yet reported in the

regular series. The case in Illinois was based, as would seem from the opinion, upon a statute almost identical with our own, upon the point in question.

The judgment below is affirmed with costs.

BUSKIRK, C. J.—I concur in the judgment rendered, but I am not satisfied with the ground upon which the ruling is placed. I think the legislature intended to provide for the taxation of the stock of the appellee, but failed to provide the necessary machinery to effectuate the purpose proposed. It is very manifest to me that the legislature had no right to impose a tax upon the entire stock of the company, and having failed to provide the proportionate part which should be subject to taxation in this State, the assessment made can not be sustained. The appellee is a foreign corporation, created by the laws of the State of New York. It must continue to exist in that state. It can not emigrate to this State. Corporations are citizens within the meaning of the clause of the Constitution of the United States which extends the judicial power of the courts of the United States to controversies between the citizens of different states ; but they are not citizens within the meaning of that clause which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." They are creatures of local law, and have not even an absolute right of recognition in other states, but depend for that and for the enforcement of their contracts upon the assent of those states, which may be given accordingly on such terms as they please. *The Farmers, etc., Ins. Co.* v. *Harrah, ante*, p. 236, and the authorities there cited.

In *Paul* v. *Virginia*, 8 Wal. 168, the court say: "The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recogni-

tion in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely ; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion.

" If, on the other hand, the provision of the Constitution could be construed to secure to citizens of each state in other states the peculiar privileges conferred by their laws, an extraterritorial operation would be given to local legislation, utterly destructive of the independence and harmony of the states. At the present day, corporations are multiplied to an almost indefinite extent. There is scarcely a business pursued requiring the expenditure of large capital, or the union of large numbers, that is not carried on by corporations. It is not too much to say that the wealth and business of the country are to a great extent controlled by them. And if, when composed of citizens of one state, their corporate powers and franchises could be exercised in other states without restriction, it is easy to see that, with the advantages thus possessed, the most important business of those states would soon pass into their hands. The principal business of every state would, in fact, be controlled by corporations created by other states."

In the case of *The Western Union Telegraph Co.* v. *Leib, supra,* the Supreme Court of Illinois held that there can be no doubt of the power of the legislature to impose taxation on foreign corporations, to whatever extent it may in its discretion choose, as the condition upon which such corporations shall be allowed to exercise their franchises in the state.

The power of the State being undoubted, in my opinion, a proper regard for the independence of the State, as well as

the protection of our own citizens in their business affairs, makes it the imperative duty of the legislature to impose upon all foreign corporations exercising their powers and franchises in this State, as conditions to their recognition in this State and the enforcement of their contracts made herein, such restrictions and burdens as justice and sound policy may require.