## CULBERTSON *v.* THE BOARD OF COMMISSIONERS OF FLOYD COUNTY.

DOMICIL.—*Taxation.*—In the provision of the assessment law, that "all personal property owned by persons residing within this State, whether it is in or out of this State, and all personal property within this State, owned by persons not residing within this State, subject to the exceptions hereinafter stated, shall be subject to taxation," 1 G. & H. 69, sec. 3, the word "residing" has reference to fixed and permanent domicil, and not to temporary or transitory residence.

SAME.—A person can have but one domicil at a time, and cannot lose one until he has acquired another.

SAME.—*Temporary or Indefinite Absence from Domicil.*—A person whose domicil, for many years prior to August, 1870, had been in this State, where he owned a dwelling-house, then· rented the same, with the furniture thereof, for an indefinite time, three months' notice being required to terminate the lease, and, in company with his family, left this State and went to Europe, with the intention of ceasing to be a resident of Indiana for an indefinite time, and with the expectation of again becoming a citizen of Indiana at some indefinite time in the future, probably two or three years. In November, 1872, he and his family returned from Europe, where they had lived in the meantime, to Indiana, and resumed possession of said dwelling-house, where they continued to reside. *Held*, that said person was taxable for the years 1871 and 1872, as a person "residing within this State."

From the Floyd Circuit Court.

*G. V. Howk* and *W. W. Tuley*, for appellant.

*J. H. Stotsenburg*, for appellee.

BUSKIRK, J.—In March, 1873, the appellant presented his petition to the board of commissioners of Floyd county, the appellee, under the provisions of an act entitled "an act requiring county commissioners to perform certain duties in relation to the refunding of taxes wrongfully assessed and collected," approved March 2d, 1853. 1 G. & H. 110. The objects of the petition were to obtain the refunding of certain taxes, assessed against the appellant, for the year 1871, and paid for him without his knowledge or consent, and also to obtain the abatement of certain other taxes assessed against him for the year 1872.

The prayer of the petition was denied by the appellee, and an appeal was taken from its decision to the court below. The cause was submitted to the court below for trial, upon an agreed statement of facts, and a finding was made in favor of appellant, but in a merely nominal amount, and to a very limited extent. To so much of the finding of the court below as was adverse to the prayer of his petition, the appellant at the time excepted.

The agreed statement of facts is as follows:

"Prior to the 8th day of August, 1870, the said John C. Culbertson resided in the city of New Albany, Indiana. He had resided there for about thirty years from choice. He was not born in Indiana. In August, 1870, he had no occupation or business of any kind. He lived upon an income derived from the rents of real estate, bank stocks and money loaned. He had a dwelling-house on Bank street, in New Albany, which he occupied with his family, consisting of his wife and two children, until the 8th day of August, 1870.

"On the said 8th day of August, 1870, he relinquished the possession of his house to one Conn, having rented the same to him, with all the furniture therein, in consideration of a rental of three hundred and fifty dollars per annum,

payable quarterly, and agreeing to give said Conn three months' notice before requiring him to vacate the premises. No time was fixed for the determination of the lease, other than as above stated.

"On the same day, with the intention of ceasing to be a resident of Indiana for an indefinite time, he departed from Indiana, with all the members of his family, for the purpose of residing in Europe, with the expectation of again becoming a citizen of Indiana at some indefinite time in the future, probably two or three years.

"The person Conn, who from that day occupied the dwelling-house and used the furniture, was not in any manner related to said Culbertson or his family, and no room was reserved therein; neither was the furniture therein reserved for them.

"While Culbertson and his family were in Europe, and in December, 1870, some four months after he left, he wrote a letter to his brother, William S. Culbertson, a merchant of New Albany, which contained the following:

"'They of course will only tax me upon my realty this year, as I have ceased to be a citizen for a year or two, and as life is uncertain, may never become one again.'

"Culbertson and his family rented part of a furnished house in London during August, September and a portion of October, 1870, wherein he and his family regularly kept house during that period.

"They then travelled from place to place on the Continent, and after living in Europe for two years and a quarter nearly, in August, 1872, he notified said Conn that he would require him to vacate his house in November following. He returned with his family in November, 1872, to New Albany, and from that time to March, 1873, they resided in New Albany.

"Between August 8th, 1870, and their return from Europe, neither Culbertson nor any member of his family was in the United States, and during part of the time the children were at school in Europe.

"On January 1st, 1871, Culbertson owned real estate in New Albany township, in which the city of New Albany is situated, and corporation stocks of the fair value of twenty-three thousand three hundred and ninety dollars.

"He also owned furniture in the house held by Conn of the value of one thousand three hundred and eighty-seven dollars.

"Besides the realty and furniture, he had intangible personal property, to the amount of forty-seven thousand two hundred and eight dollars. Of this sum, one thousand five hundred and eight dollars was on deposit in London, England, and upon his person in Europe, and the residue, forty-five thousand seven hundred dollars, consisted of three thousand seven hundred dollars, deposited in a New Albany bank, and forty-two thousand dollars loaned at interest to the New Albany Woolen Mill Company, a corporation organized and doing business in New Albany township, outside of New Albany.

"Culbertson did not list, nor did any one for him, at his instance or request, list any of said personalty. The assessor for the year 1871, not finding him or any one for him to leave a list with, put down an assessment of his personalty for 1871 by copying that of 1870 and returned the same, without the knowledge or aid of said Culbertson. The assessment so made and returned by the assessor was similar in amount and description to the realty and personalty actually owned by the said Culbertson on January 1st, 1871.

"In March, 1872, the cashier of the brother of said Culbertson, without his direction, knowledge, consent or subsequent ratification of the act, paid eight hundred and eighty-one dollars and fifteen cents, the amount of tax for state and county purposes for 1871, which had been assessed as above described, to the treasurer of Floyd county."

Upon the foregoing facts, two questions were submitted to the court below for its decision, and, by the exceptions saved, the same questions are fairly presented by the record

of this cause for the consideration of this court. These questions may be thus stated:

1. Was the appellant, upon the 1st day of January, 1871, or upon the 1st day of January, 1872, upon the facts admitted, a person "residing within this State," within the meaning of those words, as the same are used in the third section of the assessment law, approved June 21st, 1852, 1 G. & H. 69?

2. If the appellant, upon the said days, upon the facts admitted, was a person "not residing within this State," within the meaning of those words, as used in said third section, then, was the personal estate of the appellant, to the amount of forty-seven thousand two hundred and eight dollars, consisting of moneys on his person and on deposit, and money loaned to a corporation of this State, "personal property within this State," within the meaning of those words, as the same are used in said third section?

In the court below, the first of these questions was decided in favor of the appellant, the court holding, upon the facts admitted, that the appellant, during the years 1871 and 1872, was not a person "residing within this State," within the meaning of those words, as used in said third section.

No exception was taken to this ruling by the appellee, but the court held that the appellant was liable to be taxed as a non-resident of the State upon all personal property within this State. To this ruling the appellant excepted, and now assigns it for error here, and such assignment presents for decision the question of whether the appellant was a resident or a non-resident of this State, upon the agreed facts, from August, 1870, to November, 1872. The liability of the appellant to be taxed is regulated by the third section of the assessment law, approved June 21st, 1852, which reads as follows:

"Sec. 3. All real property within this State, and all personal property owned by persons residing within this State, whether it is in or out of this State, and all personal property within this State, owned by persons not residing within

this State, subject to the exceptions hereinafter stated, shall be subject to taxation." 1 G. & H. 69.

By the above section, a broad and well defined distinction is drawn between residents and non-residents of the State. A resident of the State is taxable upon all the personal property which he may own, whether it is within or without this State. In such case, the *situs* of the property does not affect the question of its taxation.

Under the second clause of said section, "all personal property within this State, owned by persons not residing within this State," is subject to taxation. In the first case the residence of the owner, and in the second the *situs* of the property, gives the right to tax. In the one case the owner must reside within this State, and in the other the property must be situated within this State. If, therefore, the appellant was a resident of this State on the first days of January, 1871 and 1872, all the property owned by him, whether it was within this State or in Europe, was subject to taxation. If, upon the other hand, the appellant was a non-resident of this State, during such years, then he was only subject to be taxed upon such portion of his personal estate as was actually within this State. *Rieman* v. *Shepard*, 27 Ind. 288; *Riley* v. *The Western Union Tel. Co.*, 47 Ind. 511.

It is quite obvious that the decision of the case in judgment must depend upon whether the appellant was a resident of this State at the times when said taxes were assessed. The word used in the third section of the assessment law is "residing." In what sense was that word used? The word "domicil" is not used in our constitution. The words "inhabitant" and "resident," "reside" and "resided," are used as synonymous. In section 2 of article 2, in defining who shall be voters, the words "resided" and "reside" are used. In section 7 of article 4, in prescribing the qualifications of senators and representatives, the word "inhabitant" is used. Section 7 of article 5, in defining the qualifications of Governor and Lieutenant Governor, uses the word "resident." Sections 3 and 9 of article 7 require the Supreme

and circuit judges to "reside" within their respective districts and circuits. Section 4 of article 6, in defining the qualifications of county officers, uses the word "inhabitant." The same use of these words will be found in our statute. We think that the word "residing," as used in the third section of the assessment law, was intended to convey the idea of a fixed and permanent residence, and not a temporary or transitory place of abode.

It is fully shown by the facts agreed upon, that the domicil of the appellant had been, for many years prior to August, 1870, in New Albany, Indiana; that he owned a dwelling-house therein, which he rented, with the furniture, for an indefinite time, three months' notice being required to terminate the lease; and that he and his family left this State, with the intention of remaining in Europe for an indefinite time.

The controlling question in the case is, whether, upon the agreed facts, the appellant changed his domicil and ceased to be a resident of Indiana. It is agreed that, "with the intention of ceasing to be a resident of Indiana for an indefinite time, he departed from Indiana, with all the members of his family, for the purpose of residing in Europe, with the expectation of again becoming a citizen of Indiana, at some indefinite time in the future, probably two or three years."

The case of *Sears* v. *City of Boston*, 1 Met. 250, is much like the case in judgment. The facts and finding were as follows:

Sears, a native inhabitant of Boston, intending to reside in France, with his family, departed for that country in June, 1836, and was followed by his family about three months afterwards. His dwelling-house and furniture were leased for a year, and he hired a house for a year in Paris. At the time of his departure, he intended to return and resume his residence in Boston, but had not fixed on any time for his return. Prior to the assessment of the taxes for the current year, his agent in Boston delivered the following notice to the assessor:

" The undersigned, as agent of David Sears, and in his behalf, informs you that Mr. Sears with his family removed from this city, and leased his mansion house, nearly a year since. He has ever since continued, and still continues, absent with his family. This notice is given to enable you, before the assessment of taxes for the current year, to understand that Mr. Sears will not consider himself chargeable with taxes as an inhabitant of, or resident in, Boston."

He returned in about sixteen months, and his family in about nine months afterwards. The court held that he continued to be an inhabitant of Boston, and that he was rightly taxed there during his absence, for his person and personal property. Chief Justice SHAW, in rendering the opinion of the court, said:

" Actual residence, that is, personal presence in a place, is one circumstance to determine the domicil, or the fact of being an inhabitant; but it is far from being conclusive. A seaman on a long voyage, and a soldier in actual service, may be respectively inhabitants of a place, though not personally present there for years. It depends, therefore, upon many other considerations, besides actual presence. Where an old resident and inhabitant, having a domicil from his birth in a particular place, goes to another place or country, the great question whether he has changed his domicil, or whether he has ceased to be an inhabitant of one place and become an inhabitant of another, will depend mainly upon the question, to be determined from all the circumstances, whether the new residence is temporary or permanent; whether it is occasional, for the purpose of a visit, or of accomplishing a temporary object; or whether it is for the purpose of continued residence and abode, until some new resolution be taken to remove. If the departure from one's fixed and settled abode is for a purpose in its nature temporary, whether it be business or pleasure, accompanied with an intent of returning and resuming the former place of abode as soon as such purpose is accomplished; in general, such a person continues to be an inhabitant at such place of abode, for all purposes of

enjoying civil and political privileges, and of being subject to civil duties.

" Taking the facts as submitted to the court, in the present case, we are all of opinion that they indicate a casual and temporary departure of the plaintiff from his place of permanent abode, and that he still continued to be an inhabitant of Boston, liable to be taxed for his poll and personal property. Most of the circumstances point to Boston as the fixed place of his abode, and to Paris as a place of temporary residence. Here he was born and educated, and acquired his property. Here was his dwelling-house ; and though leased during his absence, it was with the furniture, and for a very short term, so that his family establishment could be resumed on his return. But the very strong circumstance which characterizes this case is, that at the time of the plaintiff's departure, it was his intention to resume his residence in Boston. It indicates that Paris was a place of temporary and not of permanent abode, and that he did not relinquish his domicil, or cease to be an inhabitant of Boston. Had he returned to Boston a few days before a town meeting or an election, we think he would have had a right to attend and vote as an inhabitant, in the same manner as if he had not been absent. He would have been in the same situation, in this respect, as a soldier, or mariner, or other person temporarily absent from his home, for purposes of business or pleasure.

" The circumstance of the plaintiff's taking a house in Paris for one year—it not appearing he engaged, or that it was his intention to engage, in any business or occupation abroad—is not sufficient to control the other circumstances tending to show that Paris was a place of a temporary visit, and not a permanent residence ; that he was there as a sojourner, and not as an inhabitant."

It is quite plain, from the foregoing authority, that the appellant did not acquire a domicil in Europe. The questions arise, whether a person can have more than one domicil at the same time, and whether he can lose one until he

has acquired another. In *Bulkley* v. *The Inhabitants of Williamstown*, 3 Gray, 493, the court say: " The general rule, and, for practical purposes, a fixed rule, is, that a man must have a habitation somewhere; he can have but one; and therefore, in order to lose one, he must acquire another. This is the test, the practical test; and it is hardly necessary to say how important it is to have a practical rule, and a general rule. One of the fixed rules on the subject is this; that a purpose to change, unaccompanied by actual removal or change of residence, does not constitute a change of domicil. The fact and intent must concur. He must remove, without the intention of going back. The question here is, whether he can abandon one, without acquiring another, and we think it has always been held that he cannot. If he goes into another state, and returns for his family, his personal presence there, concurring with the intent, may fix his domicil there. But if he has not previously removed to the other state, he has not acquired a domicil there, or lost one here."

In *Lyman* v. *Fiske*, 17 Pick. 231, the court say: "It is difficult to give an exact definition of habitancy. In general terms, one may be designated as an inhabitant of that place, which constitutes the principal seat of his residence, of his business, pursuits, connexions, attachments, and of his political and municipal relations. It is manifest, therefore, that it embraces the fact of residence at a place, with the intent to regard it and make it his home. The act and intent must concur, and the intent may be inferred from declarations and conduct."

We cite the following authorities, as sustaining the doctrine laid down in the foregoing cases: Note 1 to *French* v. *Lighty*, 9 Ind. 475; *Frost* v. *Brisbin*, 19 Wend. 11; *Haggart* v. *Morgan*, 1 Seld. 422; *Bell* v. *Pierce*, 51 N. Y. 12; *In re Nichols*, 54 N. Y. 62; *Daniel* v. *Sullivan*, 46 Ga. 277; *Arnold* v. *Davis*, 8 R. I. 341; *Tripp* v. *Brown*, 9 R. I. 240; *Parsons* v. *City of Bangor*, 61 Me. 457; *Foster* v. *Hall*, 4 Humph. 346; *Herriman* v. *Stowers*, 43 Me. 497; *The State*

v. *Ross,* 4 Zab. 497 ; *Briggs* v. *Inhabitants of Rochester,* 16 Gray, 337 ; *Lee* v. *City of Boston,* 2 Gray, 484 ; *Carnoe* v. *Inhabitants of Freetown,* 9 Gray, 357 ; *Otis* v. *City of Boston,* 12 Cush. 44 ; *Cabot* v. *City of Boston,* 12 Cush. 52 ; *Harvard College* v. *Gore,* 5 Pick. 370 ; Hilliard on Taxation, 107–140, and authorities cited ; Cooley on Taxation, 269, and authorities cited ; *Judkins* v. *Reed,* 48 Me. 386 ; *Chenery* v. *Inhabitants of Waltham,* 8 Cush. 327 ; *Hardy* v. *Inhabitants of Yarmouth,* 6 Allen, 277 ; *Mead* v. *Inhabitants of Boxborough,* 11 Cush. 362 ; *Fry's Election Case,* 71 Penn. St. 302 ; S. C., 10 Am. Rep. 698.

From an examination of the foregoing authorities, we are thoroughly satisfied that appellant did not lose his residence in this State ; that immediately upon his return home, he was entitled to exercise all his political, civil and municipal rights ; that he was eligible to office and entitled to vote ; and that he is to be regarded as a person residing within this State, within the meaning of the third section of the assessment law, *supra,* and was subject to be taxed under the first clause of said section.

The conclusion reached renders it unnecessary for us to consider the second question stated above. As the appellant is subject to taxation as a resident of the State, he cannot also be taxed as a non-resident.

The facts are all agreed to. There is no necessity for a new trial. Buskirk's Prac. 334.

The judgment is reversed, with costs ; and the cause is remanded, with directions to the court below to render judgment for the appellee.