Ex parte WHITE.

(District Court, D. New Hampshire. November 30, 1915.)

No. 173.

1. DOMICILE ⬥4—CHANGE—INTENT.

Assuming that a member of the army may change his domicile, and establish it at any place he sees fit, if not inconsistent with the military situation, his intention to change must be clear, and must be associated with something fixed and established as indicating such a purpose.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. ⬥4.]

2. TAXATION ⬥106—PERSONS SUBJECT TO POLL TAX—"INHABITANT"—"DOMICILE."

Laws N. H. 1913, c. 82, § 1, provides that a poll tax of $2 shall be assessed on every male inhabitant of the state within certain ages. Pub. St. N. H. 1901, c. 2, § 2, provides that words and phrases, except technical words and words which have acquired a peculiar meaning, shall be construed according to the common usage of the language, and section 6 provides that the word "inhabitant" may mean a resident or person dwelling and having his home in any city, town, or place. An officer in the Coast Artillery branch of the Army, who had a parental domicile in New York, where he returned at the expiration of each term of enlistment, and where, after the death of his parents, he had a room with his sisters, was stationed at Ft. Stark. After his marriage to a New Hampshire woman he maintained an apartment in the city of Portsmouth because of the lack of facilities at the fort, and by special military authorization spent several nights a week there. *Held*, that he was not subject to the poll tax, even assuming that a member of the army is so far independent that he may for certain purposes establish a domicile or residence away from his military locality, as there is no substantial difference between domicile and inhabitancy, and statutes using the word "inhabitant" in imposing a poll tax mean "domicile" in its ordinary sense, which presupposes an element of more or less permanency, and that the military situation was inconsistent with any supposed permanency of domicile in the city of Portsmouth and away from the officer's station of duty.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 204; Dec. Dig. ⬥106.

For other definitions, see Words and Phrases, First and Second Series, Domicile; Inhabitant.]

Petition by John P. White for a writ of habeas corpus. Petitioner discharged.

Fred H. Brown, U. S. Atty., of Somersworth, N. H., for petitioner. J. R. Waldron, of Portsmouth, N. H., for respondent.

ALDRICH, District Judge.    In 1915 the city of Portsmouth assessed a poll tax against the petitioner, which he refused to pay, upon the ground that he was an officer of the United States army in actual service, having residence in New York, and not in Portsmouth. Upon

such refusal he was taken into custody, upon a warrant of the city collector, and was thereafterwards committed to the Rockingham county jail, from which custody he seeks relief through a petition for habeas corpus, upon the claim that his detention is unlawful. At the time the tax was assessed the petitioner was a sergeant in the Coast Artillery branch of the United States Army stationed at Ft. Stark, in the town of Newcastle, in New Hampshire. Ft. Stark is a subfort of Ft. Constitution, both having been ceded to the United States for military purposes.

The petitioner was born in New York City, where he lived with his parents until he enlisted in 1899. His first service was at Ft. Ethan Allen; then in the Philippine Islands; afterwards re-enlisting from New York City and serving at Ft. Terry, in New York, and Ft. Warren, in Massachusetts. He has remained in the service a very large part of the time since his enlistment in 1899, and at the expiration of each enlistment term he has returned to New York. After his service at Ft. Warren he went to New York and remained out of service for nine months, when he again re-enlisted in 1909 for a term of three years and was ordered to Ft. Constitution. At the expiration of his three-year term he re-enlisted, and was given a ten days furlough and went to New York. At the expiration of his term in 1915 he again re-enlisted, and was given a furlough in order that he might go to New York and New Jersey for a period of twenty days.' After the death of his parents he had a room with his sisters in New York, which he in part furnished.

While there is no specific finding of the fact of residence, inhabitancy, or domicile in New York, the findings are substantially to that end, and we infer for the purposes of the decision here that such was the fact, unless his New York domicile has been terminated by his marriage to a New Hampshire woman, whose residence before marriage was at North Conway, N. H. Since such marriage the petitioner himself has had quarters at the fort, and has used his government allowance for subsistence there. It is said by the master that he is entitled to quarters for himself and wife at the fort, but because of the lack of facilities there he has maintained a home for her in a tenement in the city of Portsmouth.

The findings of the master exclude the idea that the arrangement for the apartment in Portsmouth is permanent, with the intention of making Portsmouth the petitioner's home. The petitioner's service at the fort is constant, except that he spends three or four nights a week at the apartment upon special military authorization.

It is apparent that the master in his findings was influenced somewhat by the view that the military service at Ft. Stark was temporary, subject to change under orders from superior officers at any moment, when service of the military arm was needed at other places. That view must be perfectly correct, as a general proposition, for the reason that, from the very nature of the duty which they have assumed, members of such service are constantly subject to orders.

Counsel on both sides have ably covered various phases of possible

questions, and have cited authorities having special reference to the power of the general government to protect its military arm, as a necessary instrumentality for the protection of rights, and as an instrument of government defense.

It is quite sufficient to say that the authorities and. the reasoning upon the subject abundantly establish the general proposition that the government arm, as a necessary government instrumentality, may and should be protected from unreasonable and unwarrantable interference.

The general proposition that the presence of the army in a particular locality is not of its own volition, and is presumably only temporary, is probably subject to the qualification that actual residence of members of the army in a given locality may be of such a fixed and permanent character as to exclude altogether the idea of domicile or residence in any other locality, and to the further qualification that, though one in the military service is subject to the orders of superior officers, the circumstances may be such that he remains so far sui juris, as to matters not involved in his military duties, that he may, if he so desires, change his domicile and establish it at any place he sees fit. Thus it is apparent that there is no hard and fast rule governing all cases.

[1] Assuming the proposition that a member of the army may change his domicile, if not inconsistent with the military situation, to be one based upon reason, and established by the authorities, it still remains that the intention to change must be clear, and must be associated with something fixed and established as indicating such a purpose, and the circumstances in this case are against such an idea.

Questions as to local taxation of a member of the United States Army cannot be disassociated from considerations of public policy. The Court of Appeals for the First Circuit, in deciding against the United States in Gill, Collector, v. Bartlett, 224 Fed. 927, 928, —— C. C. A. ——, was simply stating a plain proposition with reference to government power to tax private rights when, in speaking of property rights, it said that:

"The imposition of a tax imposed by a government is a burden upon private interests laid upon private property under the necessary exercise of an arbitrary power, and because of the character of the power exercised, the rule is universal that, when the question arises whether given property should be held subject to the burden, the taxing power must make it clear that the statute was intended to cover the property in question."

The principle that the intention must be clear applies as well to personal taxation as to property taxation.

While the United States attorney, who represents the petitioner, does not contend against the idea that a soldier may have a domicile apart from the federal station where his service is being rendered which may subject his property to State taxation, and that he may change it, he does strongly contend that a soldier in actual service is a government instrumentality, and therefore not subject to restraints incident to the imposition and collection of a poll tax.

It is urged that the power of the United States government to pro-

tect its soldiers from arrest and imprisonment for a poll tax is an inherent, essential, and necessary power, and that the recognition of the right of local governments to imprison its soldiers for nonpayment of a poll tax would tend to inefficiency, and to the destruction of the independence of the federal military arm; that the residence of a soldier in such a sense must be referred to the military station over which the United States exercises exclusive jurisdiction; that there can be no residence elsewhere for purposes of personal taxation; and, therefore, that considerations with respect to domicile do not enter at all into the question of the right of the paramount government to protect its military arm from restraints of liberty and burdens, not incident to crime, but from burdens and restraints, affecting personal liberty, imposed by local governments through their taxing powers for local money purposes.

It is quite probable that, under logical analysis, the authorities sustain such contention. Webster v. Seymour, 8 Vt. 135, 138, 139; Opinion of Justices, 1 Metc. (Mass.) 580, 583; 1 Cooley on Taxation, 84, 130; 2 Story on the Constitution, §§ 1224, 1227; Com. v. Clary, 8 Mass. 72, 77; Company v. Lowe, 114 U. S. 525, 534, 5 Sup. Ct. 995, 29 L. Ed. 264; McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579; Weston v. City Council, 2 Pet. 449, 7 L. Ed. 481; Society v. Coite, 6 Wall. 594, 18 L. Ed. 897; Thompson v. Railroad, 9 Wall. 579, 19 L. Ed. 792; Railroad v. Peniston, 18 Wall. 5, 21 L. Ed. 787; Dobbins v. Commissioner, 16 Pet. 435, 10 L. Ed. 1022; Searight v. Stokes, 3 How. 151, 11 L. Ed. 537; Bank v. Comm., 9 Wall. 353, 19 L. Ed. 701; Collector v. Day, 11 Wall. 113, 20 L. Ed. 122; Pundt v. Pendleton (D. C.) 167 Fed. 997; Crandall v. Nevada, 6 Wall. 35, 18 L. Ed. 745; Hylton v. U. S., 3 Dall. 171, 1 L. Ed. 556; 5 A. & E. Ency. 142; 6 Cyc. 349; 14 Cyc. 849.

[2] While not questioning the broad and apparently essential theory that a soldier is a government instrumentality whose personal residence, or status, when viewed in respect to restraints of personal liberty, not based upon a charge of crime, must be referred to the station at which the government service is being rendered, I am not quite sure that any of the cases cover a situation precisely like the one in question here, because the theory of the city of Portsmouth is that the petitioner was permissibly and authoritatively away from the military station under leave granted by his superior officers, not in defiance of military authority, but under such circumstances that he might establish and maintain a domicile or inhabitancy outside the military station and away from his original domicile in New York. Therefore I am inclined to dispose of this case under the question whether the petitioner in fact had a domicile in the city of Portsmouth.

Having assumed that the federal government may protect its army against unreasonable interference, whether it results from unwarrantable local taxation or from any other unreasonable interference, and having assumed, on the other hand, that a member of the army is so far sui juris and so far independent that he may for certain purposes establish a domicile or residence away from his military locality, pro-

vided it does not interfere with his military service, it only remains for purposes of decision to consider the question whether the New Hampshire statutes should be construed as intending and authorizing a poll tax within the limits of New Hampshire under the facts and the domiciliary circumstances of this case.

It is quite true that the original New Hampshire statute is general. It declares that:

"All male polls from twenty-one to seventy years of age are liable to be taxed, except paupers, insane persons, and others exempt by special provisions of Law." P. S. N. H. c. 55, § 1.

Still, notwithstanding the sweeping terms of the older New Hampshire statutes, if they were the statutes upon which the present rights should depend, it would hardly be urged that they were intended to cover itinerant male persons who happened to be in a given New Hampshire locality on the day on which taxes are required to be assessed, and this without regard to whether they were in the military service or not.

The reasonable view would be that the idea of the right to tax a person presupposes some substantial element of permanency, and New Hampshire judicial expression, and the judicial reasoning and expression elsewhere, are that way.

The New Hampshire statutory right to tax must, of course, be determined with reference to the constitutional provision which gives the Legislature power to tax, and thus the statute of 1830, which did not use the constitutional designation of all the inhabitants of and residents within the state, but the designation of each male poll, was construed by the justices, though dealing with a question in respect to aliens, as having reference to the constitutional term inhabitants and residents, as used in their ordinary sense, and not as including all residents. Opinion of Justices, 8 N. H. 573. See also Davis v. School District, 44 N. H. 398, 405; Orr v. Quimby, 54 N. H. 590, 620, 637; Herriman v. Stowers, 43 Me. 497; Jacobs Law of Domicil, § 51.

Moreover, the Legislature of New Hampshire, apparently recognizing the idea that the right to assess a tax upon polls should rest upon explicit and practical statutory designation, rather than upon judicial interpretation under the Constitution, expressly embodied the term every male inhabitant of the state, in the statute of 1913, which is the statute under which the tax in question was assessed (chapter 82, § 1, Session Laws 1913), and it should not be forgotten that chapter 2, § 6, of the Public Laws of New Hampshire, a chapter on the construction of statutes, declares that the word "inhabitant" may mean a resident or person dwelling and having his home in any city, town or place, and it should also be borne in mind that the preceding section 2 of the same chapter declares that words and phrases shall be construed according to the common and approved usage of the language, except as to technical words of a peculiar meaning.

It is clear that since the interpretation of the statute of 1830, and especially since the broadened provision of the statute of 1913, that

there has been no New Hampshire purpose to arbitrarily tax each male poll regardless of the question of inhabitancy, and that the idea of inhabitancy is to be accepted in the ordinary sense. It is also clear that the term "inhabitancy" has reference to that of domicile, and that the question of domicile is largely controlled by intention with more or less residence (Moore v. Wilkins, 10 N. H. 452, 456), and that such residence must at least have a permanency beyond that involved in a temporary purpose, and an inhabitancy which is necessarily subordinate to an authority which at any moment may terminate it, and move the person to other parts of the national domain.

Passing the difficulty of giving the term "domicile" a definition (Jacobs, Law of Domicil, §§ 57–77) which shall cover all cases, it is safe enough to assume that in the New Hampshire sense, and in the federal sense as well, domicile and inhabitancy are synonymous, and that the New Hampshire view of inhabitancy, like that of Massachusetts (Borland v. City of Boston, 132 Mass. 89, 93, 42 Am. Rep. 424), is that there is no substantial difference between domicile and inhabitancy, and that statutes which use the word "inhabitant" in establishing the right to impose a poll tax mean domicile in its ordinary sense, with the idea recognized everywhere, whether the term "domicile" or "inhabitancy" is used, that it at least presupposes an element of more or less permanency. See Stockton v. Staples, 66 Me. 197; Woodard v. Isham, 43 Vt. 123; Parsons v. City of Bangor, 61 Me. 457; Crawford v. Wilson, 4 Barb. 504, 519; Culbertson v. Board of Commissioners of Floyd County, 52 Ind. 361, 367; Cooley on Taxation (3d Ed.) 641; Desty, 293; Judson on Taxation, 529, 530.

The idea of permanency and situs is recognized in the tax laws with respect to property in quasi situations of transit, and the property principle has, of course, analogous bearing. Lumber Co. v. Columbia, 62 N. H. 286; Coe v. Errol, 62 N. H. 303; Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715.

Coming now to the facts of domicile, or inhabitancy, and to that phase of the contention that the inhabitancy or domicile in the city of Portsmouth was under authority or permission of the federal government, rather than in defiance of its authority, it must be said that there is nothing in the record, or in the circumstances, which warrants the assumption that the government intended a local domicile or inhabitancy, away from the military station, which should become permanent, in the sense that military usefulness should be subordinated to local personal taxation.

Now, as to the main fact of the intention on the part of the petitioner. It is clear that there was no definite purpose to make the Portsmouth residence, such as it was, a permanent residence. The petitioner had a parental domicile in New York, and to establish a change for any purpose the intention must be clear. Here the military situation was altogether inconsistent with the element of any supposed permanency in the city of Portsmouth and away from the station of duty. Under such circumstances, the domicile of the husband would

not follow that of the wife under an arbitrary rule; and maintaining the apartment in Portsmouth that his wife might live there, and that he might visit her under leave when the circumstances should permit, must be accepted as a mere incident of his military status, and one entirely subordinate to his duty to the government, when viewed in respect to personal taxation and the restraints of personal liberty, involved in the enforcement of a personal tax, which necessarily would interfere with the free performance of a paramount duty.

The petitioner should be discharged from custody under city and state authority; and it is so ordered.