KENNEDY *v.* KENNEDY.

4-6887                                          169 S. W. 2d 876

Opinion delivered April 5, 1943.

*Clarence E. Benadum, Mallory & Darnell* and *Wm. J. Kirby,* for appellant.

*House, Moses & Holmes,* for appellee.

SMITH, J. Appellant prosecutes this appeal to reverse the decree of the Garland chancery court granting her husband a divorce. She prays this relief upon two grounds, (1) that the court was without jurisdiction; (2) that cause for divorce was not shown. Having concluded that the first point is well taken we do not consider the second.

Appellee is a colonel in the regular United States Army, with twenty-four years and seven months service to his credit at the time of the trial. The parties to this litigation were married in 1920, and lived together as husband and wife until March 25, 1941, since which time they have lived separate and apart. Two children were born to this union, a son now twenty-one years of age and a daughter twenty.

The colonel served in many Army posts, one of these being Omaha, Nebraska, where their household furniture is in storage. He was ordered to Camp Robinson, Little Rock, in January, 1941, and remained there for three months, when he was ordered to Fort Benning, Georgia. He was later transferred back to Camp Robinson, but was soon sent to the Army and Navy Hospital in Hot Springs for treatment. Just how long he was in the hospital is not clear, but his daughter testified that her father was there for some months.

The colonel was ill when he came to Little Rock and, while the testimony is obscure and indefinite, we have the impression from the testimony that most of his stay in Arkansas has been in this hospital. He was retired officially January 31, 1942, on account of his health. He testified that he is still subject to orders from the War Department and expects a call as soon as the Surgeon General's Department will permit his return to active duty.

A careful search of the record fails to disclose any statement by Colonel Kennedy that he ever became a resident of this state, and the only testimony tending to show that he ever established a residence in this state was that of a Mrs. Wilson, who operates four rooming houses in the city of Hot Springs. This testimony is as follows:

"Q. Do you know the plaintiff in this case, Colonel S. Y. Kennedy? A. I do. Q. State whether or not Colonel Kennedy has been a roomer in one of your apartment houses. A. He was; he came here on October 27. Q. And when did he leave your apartment house? A. In January. Q. In January, 1942? A. Yes."

The colonel did not testify that he occupied those quarters for any period of time, although the implication is that he did, and this is the only testimony tending to show that he ever acquired a residence in this state, apart from the fact that he was stationed in this state as an Army officer.

If it be said that he established a residence in this state, apart from his service here as an Army officer,

the fact remains that within less than two months from that date he filed this suit for a divorce, the suit having been filed December 2, 1941.

The suit was brought under the authority of § 4386, Pope's Digest, the first paragraph of which provides that to obtain a divorce under its provisions the plaintiff must prove: "A residence in the state for three months next before the final judgment granting a divorce in the action and a residence for two months next before the commencement of the action."

As we have said, the only testimony tending to show that the colonel ever acquired a residence in this state, apart from the fact that he was stationed in this state for military service, is to the effect that he had not been a resident of this state for two months when the suit was brought. We say apart from the fact that he was stationed in this state as an officer in the Army because of § 7 of art. III of our Constitution, which reads as follows: "No soldier, sailor or marine in the military or naval service of the United States shall acquire a residence by reason of being stationed on duty in this state."

This section of the Constitution does not mean that a soldier, sailor or marine stationed in this state may not acquire residence in this state, but it does mean that he may not acquire a residence from the mere fact that he was stationed in the state for whatever period of time he may be so stationed. Apart from that service he must have a residence in this state, and not elsewhere, for a period of two months before filing a suit for divorce.

In the case of *Carlson* v. *Carlson*, 198 Ark. 231, 128 S. W. 2d 242, we said: "In the case of *Squire* v. *Squire*, 186 Ark. 511, 54 S. W. 2d 281, it was said that 'Even though she (the plaintiff) moved to this state to bring a divorce suit and had the intention of leaving after the divorce was granted, this would not deprive the court of jurisdiction, if she were actually and in good faith a *bona fide* resident for the period prescribed by the statute'."

While our divorce law was obviously intended to facilitate the granting of divorces, it has never been held

that its provisions may be availed except by one who actually and in good faith became a resident of this state for the period of time prescribed by the statute.

Now, appellant filed a motion for suit money and another motion in which alimony was prayed, and later filed an answer denying all the allegations of the complaint, along with a motion to dismiss the case upon the ground that Colonel Kennedy was not a resident of the state. These pleadings had the effect of entering the appearance of Mrs. Kennedy, but that did not confer jurisdiction upon the court, if jurisdiction did not otherwise exist.

Counsel for Colonel Kennedy insist that these pleadings do have that effect, and to sustain that contention cite the cases of *Wood* v. *Wood,* 59 Ark. 441, 27 S. W. 641, 28 L. R. A. 157, 43 Am. St. Rep. 42; *Wickliff* v. *Wickliff,* 191 Ark. 411, 86 S. W. 2d 553, and *Laird* v. *Laird,* 201 Ark. 483, 145 S. W. 2d 27. This for the reason that the decree appealed from was not rendered until May 12, 1942, which was, of course, more than three months after residence had been established.

In each of the first two of these cases a suit for divorce was prematurely brought, but subsequently an amended complaint was filed alleging matured grounds for divorce. It was held in each of those cases that the filing of the amended complaint was in effect the bringing of a new suit, and that filing an answer thereto operated to enter the appearance of the defendant to this new suit, and dispensed with the necessity for additional service. Here, Colonel Kennedy filed only one complaint and that one was filed prematurely.

In the Laird case, last above cited, both parties were residents of this state, but of different counties in the state. The question there involved was not one of jurisdiction, but of venue. There, the wife, a resident of Pulaski county, brought suit in Jackson county, the home of her husband, for a divorce. The husband filed a cross-complaint in which he prayed a divorce, and a divorce was granted him upon his cross-complaint. It was held that the chancery court of Jackson county acquired juris-

diction of the parties and of the subject-matter of the suit. The defendant, a resident of Jackson county, had the right to sue for a divorce in that county, and such was the effect of his cross-complaint upon which the decree was rendered, testimony having been taken upon the issues joined in the respective pleadings of the parties.

The case of *McLaughlin v. McLaughlin*, 193 Ark. 207, 99 S. W. 2d 571, was another case in which there was involved not the question of jurisdiction, but that of venue. The parties to that suit were both residents of this state and had resided in Garland county while living together as man and wife. The wife came to Pulaski county and sued for divorce. After pointing out that § 3502, Crawford & Moses' Digest, then in force (now § 4383, Pope's Digest) lays the venue for divorce proceedings in the county "where the complainant resides" it was said that, while no certain length of time is necessary to fix the residence contemplated by the statute in the county where the suit was brought, that residence must be *bona fide,* that is, there must have existed at the time the suit was filed the *animus manendi,* and the decree in that case was reversed because it was not shown that this intention existed when the suit was filed

In the case of In re *Deans,* 208 Fed. 1018, Judge TRIEBER said that the word "residence" was an elastic term of which no exact definition applicable to all cases could be given and that it was generally held that whether a party's removal constitutes a change of residence depends on his intention in making such removal, or the *animus manendi.*

There is no word of testimony in this record from Colonel Kennedy, or otherwise, as to the *animus manendi.* This must exist for at least three months before the rendition of the decree and must have existed for two months before the suit for divorce was filed, and this intent must, of course, be accompanied by residence in the state.

A headnote in the case of *McGill v. Miller,* 183 Ark. 585, 37 S. W. 2d 689, reads as follows: "A man has an

absolute right to change his place of abode when he pleases for any reason to do so, and he does change his place of abode when he removes from one place, with the intention of abandoning it as his place of abode, to another place where he expects to abide."

In the Conflict of Laws, vol. 1, p. 155, Professor Beale discusses the "domicile of a soldier or sailor" and the capacity of a sailor or soldier to acquire a "residence" notwithstanding his service in the Army or Navy, and it was there said: "It is, of course, possible for him (soldier) to provide a house of his own, off the post, where his family may live, if this is allowed by his superior officers; and it is possible for him to change his domicile by the proper proceedings while on leave. But he cannot acquire a domicile in an Army post." At p. 157 of the same text it is said: "This does not mean, of course, that the soldier or sailor in any way loses his personality or ceases to be *sui juris*. He is as able as anyone to acquire a new domicil so far as conditions allow. He cannot acquire it by any act done under military orders since, as has been seen, he has no choice but obedience. His orders would, so long as he remained in the Army, be enforced by all the powers of the state, and if he were permitted to leave the Army he could no longer remain in the Army quarters. He may, however, like anyone else, change his domicil by acquiring a residence outside an Army post with the intention of making it his home. Thus, in *Trigg* v. *Trigg* a soldier who had last been domiciled in California, but was originally from Missouri, when ordered to Fort Leavenworth established his wife in Kansas City intending that to be his and her home; it was held that he was domiciled in Kansas City."

The note to this text cites the following cases: *Percy* v. *Percy*, 188 Cal. 765, 207 P. 369, discussed in 26 Mich. L. Rev. 521; *Bailey* v. *Normanis, Adm'r*, 228 Ky. 790, 15 S. W. 2d 1005; *Trigg* v. *Trigg*, 226 Mo. App. 284, 41 S. W. 2d 583; Ex parte *White*, 228 F. 88.

In the first of these cases, the Percy case, the Supreme Court of California, 188 Calif. 765, 207 Pac. 370.

said: "the fact that, at the time in question, he (the soldier) was on military duty in an Army camp did not preclude him from establishing his residence there if he so desired."

The second of these cases, the Bailey case, involved the right to collect and disburse the War Risk Insurance issued to one Norman, who died a United States soldier at an Army post in Henderson, Kentucky. Norman had deserted his family in Illinois, and it was insisted that as Norman had entered the State National Guard, he could not change his residence. In overruling that contention the Supreme Court of Kentucky, 228 Ky. 790, 15 S. W. 2d. 1006, said: "But residence is a matter of fact and intention, and whatever his obligations might be as a soldier, if he in fact came to Henderson to make it his home and did make it his home, his legal residence was at Henderson."

The third of these cases, *Trigg* v. *Trigg,* quoted and approved the following statement of the law from 19 C. J. 418: "The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur."

In the fourth and last of these cases, Ex parte *White,* a headnote reads as follows: "Assuming that a member of the Army may change his domicile, and establish it at any place he sees fit, if not inconsistent with the military situation, his intention to change must be clear, and must be associated with something fixed and established as indicating such a purpose." See, also, *Wilson* v. *Luck,* 201 Ark. 594, 146 S. W. 2d 696.

We conclude, therefore, that while Colonel Kennedy did not become a resident of the state "by reason of being on duty in this state" for a longer period than three months before obtaining the divorce, yet he might have acquired residence here, notwithstanding his service in the Army, provided he had resided in the state for

three months with the *animus manendi* during all that period of time and so resided in the state for as long as two months before filing his suit for divorce. Inasmuch as that proof was not made, we must hold that his suit was prematurely brought, and the decree must, therefore, be reversed, and the cause will be dismissed.