MOHR *v.* MOHR.

4-7266                                         178 S. W. 2d 502

Opinion delivered March 13, 1944.

*June P. Wooten,* for appellant.

*O. W. Pete Wiggins,* for appellee.

McFADDIN, J. This appeal necessitates a holding concerning the residence requirements of our divorce law as applied to appellee, a major in the United States Army, stationed at Camp Robinson near Little Rock, Arkansas.

This suit for divorce was filed March 12, 1942, by the husband (appellee), alleging cruelty and indignities as grounds for divorce. An amendment was filed July 23, 1942, amplifying these grounds, alleging his status as

an officer in the United States Army, but claiming Arkansas as his "home." The defenses of his wife (appellant) were that: (1) plaintiff was not a resident of Arkansas, (2) he had no cause for divorce, and (3) he had, by cohabitation, condoned any supposed cause of divorce. From a decree dissolving the bonds of matrimony, the aggrieved wife prosecutes this appeal.

The parties were married in St. Louis, Missouri, in 1919, and lived together until sometime in 1941. They are now of middle age and have three children, being one grown daughter and two sons now in the armed forces. It is a sad commentary on fidelity that, although this couple have raised their family and the wife is in ill health, the husband has become interested in younger and more attractive women; and although he is willing to provide his wife with a monthly alimony and payment of doctor's bills, etc., still he wants his "freedom" from the marital vows assumed by him "for better-for worse" over a quarter of a century ago. Since we now decide that the husband is not a *bona fide* resident of Arkansas, we give only the facts concerning residence; and draw the curtain against the other facts in the record; thereby indulging the hope that after the husband has gone through the fire of his battle and the wife has passed the critical age common to women, they may in their older years be reunited to enjoy their children—the fruits of their marriage.

I. *The Facts About Residence.* From 1927 to early 1941, the appellee was a mail carrier in St. Louis, and in the latter years of that time he was a captain in the 138th Infantry, Missouri National Guard. As such officer he was ordered to Camp Robinson, Arkansas, in January, 1941, with the 35th Division. There was nothing in any of this that suggested that Arkansas was to become the residence of the plaintiff. He rented an apartment for Mrs. Mohr which she occupied until July, 1941, when she returned to St. Louis, and he gave up the apartment. Captain (now Major) Mohr lived within the limits of Camp Robinson as required by the camp regulations. He was not permitted to spend his nights in Little Rock

1096

and did not maintain any home for himself or his family. Some of Major Mohr's testimony in this case was taken on February 2, 1943, and on March 16, 1943, at which times he was on duty at Camp Robinson, Arkansas. The other part of his testimony was taken on deposition. Major Mohr testified on direction examination: "Q. How long have you been in Arkansas, Major? A. Since January 4, 1941. Q. Has your family been here, living in this state since you were transferred to Camp Robinson? A. Yes. Q. Have you maintained an apartment for yourself exclusively since this suit was instituted, or have you been staying at the camp? A. I have been staying at the camp in compliance with camp instructions—camp regulations."

Further on cross-examination he testified: "Q. When did you start to work for the government? A. As a substitute carrier in 1927, spent seven years as a substitute carrier. Q. You are a mail carrier in St. Louis. A. I am not today. I do hold my seniority rights. When and if I am ever released by the armed forces, I may return to St. Louis."

The plaintiff was the only person who testified as to his residence; and these excerpts are typical. When we consider that the daughter is in the Civil Service and that the two sons have been in the Army since the early part of 1941, and that the wife left Arkansas in July, 1941, (when the major gave up the apartment), it is apparent that his family has not been living in Arkansas. When we consider that he has no home in Arkansas (or even an apartment since July, 1941), but has been staying every night in Camp Robinson as required by camp regulations, it is apparent that Arkansas is not his *home* but only his place of temporary sojourn. When his testimony is considered in the light of his military assignment, it is apparent that the plaintiff is in Arkansas only because of military orders. When we consider that he retains his seniority in the postal service in St. Louis, Missouri, and that he admits that when and if he is "released by the armed forces" he "may return to St. Louis," it is apparent that he has never established a

residence in Arkansas. Considering all of these matters together, we reach the conclusion that the plaintiff has never established a residence in Arkansas as required by our divorce law, which is § 4386 of Pope's Digest, and which requires the plaintiff to prove "a residence in the state for three months next before the final judgment granting divorce in the action· and a residence of two months next before the commencement of the action."

II. *Residence Means Something More Than Mere Sojourn.* There are cases which hold that a person in the service of the United States may acquire residence in a state where he is in service sufficiently to invoke·the jurisdiction of the courts of that state in divorce matters. Some of the more recent of such cases are *Gipson* v. *Gipson,* 151 Fla. 587, 10 So. 2d 82; *St. John* v. *St. John,* 291 Ky. 363, 163 S. W. 2d 820; *Hawkins* v. *Winstead,* (Idaho) 138 Pac. 2d 972. But in each of these cases there was something more than mere presence at a military post in the state. Without lengthening this opinion to analyze the holdings of other courts we hold that there must be overt acts sufficient to demonstrate a real and *bona fide* intent to acquire residence here before the state of Arkansas—as a silent third party to every divorce suit here—will allow its courts to be used as the haven of the transient and dissatisfied spouse.

In the recent case of *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S. W. 2d 876, we had occasion to consider in detail the matter of residence, and what was there stated is fully applicable here. We quote:

"Section 7 of Art. III of our Constitution, reads as follows: 'No soldier, sailor or marine in the military or naval service of the United States shall acquire a residence by reason of being stationed on duty· in this state.'

"This section of the Constitution does not mean that a soldier, sailor or marine stationed in this state may not acquire residence in this state, but it does mean that he may not acquire a residence from the mere fact that he was stationed in the state for whatever period of time he may be so stationed. Apart from that service he must have a residence in this state, and not elsewhere,

for a period of two months before filing a suit for divorce."

And after quoting from Beale on Conflict of Laws, vol. I, p. 155, we quoted from some of the cases there cited as follows:

"The third of these cases *Trigg* v. *Trigg*, [226 Mo. App. 284, 41 S. W. 2d 583,] quoted and approved the following statement of the law from 19 C. J. 418: 'The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur.'

"In the fourth and last of these cases, Ex parte *White*, [228 Fed. 88,] a headnote reads as follows: 'Assuming that a member of he Army may change his domicile, and establish it at any place he sees fit, if not inconsistent with the military situation, his intention to change must be clear, and must be associated with something fixed and established as indicating such a purpose'."

This case of *Kennedy* v. *Kennedy* is ruling in the case at bar; and as applied to this case it leads to the inevitable result that Major Mohr was not a resident of Arkansas when he filed his suit for divorce or when the decree was granted. So the decree of the chancery court —in so far as it granted him a divorce—should be reversed.

III. *Maintenance for the Wife.* The appellant not only resisted the divorce but also prayed for maintenance, etc., and upon proper showing the chancery court decreed:

"The plaintiff is hereby ordered to pay to the defendant for her maintenance the sum of $125 per month, until further ordered by the court. Said defendant is hereby ordered to pay all hospital and doctor bills arising from recent operation upon defendant.

"That the cost of this action shall be paid by the plaintiff for which execution may issue, in form as upon a judgment at law."

We leave this quoted portion of the decree undisturbed, and the authority for such holding is found in the case of *McDougal* v. *McDougal,* 205 Ark. 945, 171 S. W. 2d 942. Even though the husband was not a resident of Arkansas and could not use its courts for divorce, nevertheless the chancery court had jurisdiction for the purpose of granting the wife the maintenance to which she was entitled.

To conclude, the decree of the chancery court is reversed, and the cause is remanded with directions to dismiss the complaint for divorce, but to retain control of the cause for the enforcement of the orders made by the chancery court for the payment of maintenance, etc.. to the wife, and with all costs assessed against appellee.