CRANE *v.* CRANE.

4-8060                                           199 S. W. 2d 317

Opinion delivered February 3, 1947.

_C. Floyd Huff, Jr._, for appellant.

_James R. Campbell_ and _Walter J. Hebert_, for appellee.

ED. F. McFADDIN, Justice. This is a divorce suit; and the only question on appeal is, whether the appellee was a _bona fide_ resident of Arkansas "for two months next before the commencement of the action," as is required by § 4386, Pope's Digest. We refer to the parties as they were styled in the lower court.

D. L. Crane filed this divorce suit on February 11, 1946. The defendant is a resident of Florida. Upon learning of the suit by letter from the attorney _ad litem_, she appeared specially, on March 5, 1946, and moved the court to dismiss the complaint for want of jurisdiction "for the reason that the plaintiff is not and has not been a resident of Garland county, Arkansas, for the time and in the manner prescribed by law to give this court jurisdiction." The evidence on this motion was heard on March 12, 1946. The chancery court denied the motion, and the defendant preserved her exceptions. Plaintiff then introduced some evidence as to alleged cause of divorce; and a decree was granted on the grounds of indignities, _i.e._, alleged acts of jealousy. On this appeal the defendant relies solely on the issue of residence. We,

therefore, refrain from detailing, or passing on, the sufficiency of the evidence as to the grounds of divorce.

I. *The Residence Requirement.* The Arkansas requirement as to residence in the "ninety-day divorces" is found in § 4386, Pope's Digest; and requires, *inter alia:* "The plaintiff, to obtain a divorce, must prove, . . . a residence for two months next before the commencement of the action."

The plaintiff was a colonel in the United States Army. We have several recent cases involving residence requirements as applied to persons in the armed services. Some of these cases are: *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S. W. 2d 876; *Mohr* v. *Mohr,* 206 Ark. 1094, 178 S. W. 2d 502; *Feldstein* v. *Feldstein,* 208 Ark. 928, 188 S. W. 2d 295; *O'Keefe* v. *O'Keefe,* 209 Ark. 837, 192 S. W. 2d 556. In the O'Keefe case we quoted from the Mohr case:

" 'There are cases which hold that a person in the service of the United States may acquire residence in a state where he is in service sufficiently to invoke the jurisdiction of the courts of that state in divorce matters. . . . But in each of these cases there was something more than mere presence at a military post in the state. Without lengthening this opinion to analyze the holdings of other courts, we hold that there must be overt acts sufficient to demonstrate a real and *bona fide* intent to acquire residence here before the State of Arkansas—as a silent third party to every divorce suit here—will allow its courts to be used as the haven of the transient and dissatisfied spouse.' "

We also held in the O'Keefe case that proof of residence must be corroborated the same as every other essential fact in a divorce case. With the foregoing cited cases[1] as guides, we examine the evidence in the case at bar.

---

[1] In addition to the cases and annotations cited in the O'Keefe case, we add the following: Annotation in 158 A. L. R. 1474; *Sturdavant* v. *Sturdavant,* 189 S. W. 2d 410 (decided by the Court of Appeals of Tennessee on November 4, 1944) ; *Zimmerman* v. *Zimmerman,* 175 Ore. 585, 155 Pac. 2d 293 (decided by the Supreme Court of Oregon on January 16, 1945.)  See, also, *Parseghian* v. *Parseghian,* 206 Ark. 869, 178 S. W. 2d 49, on the sixty-day requirement.

58

II. *The Evidence as to Residence.* The plaintiff, aged fifty years, was born in Florida, and is the eighth generation of his family to live in that state. He owns a home and other property in Florida; and his three children, ages 14, 5 and 2 years, respectively, live with their mother in that state. Colonel Crane has been in the Army 28 years. From 1941 to 1943 he was in many theaters of European warfare. He was with his wife and family in Florida for three months in 1943; and then in November of that year he went overseas to Asiatic campaigns. He returned to the United States on November 10, 1945, suffering from an asthmatic ailment; and, at his request, was sent to the Army-Navy Hospital in Hot Springs, Arkansas, for treatment. He reached Hot Springs on November 16, 1945, and stayed at the Army-Navy Hospital until December 5, 1945. Examination by doctors at the hospital indicated he might have to be retired from active service because of the asthmatic ailment. If so retired, he would, of course, seek the best climate to alleviate his suffering from asthma. His Army doctor in Hot Springs advised him to try several places for climatic reactions, and settle in the locality best suited to him. Acting on this advice, Colonel Crane purchased a car in Hot Springs, and left that city on December 5, 1945, and reached San Francisco, California, on December 12, 1945, where he maintained a hotel room continuously until February 8, 1946. He says that from December 5, 1945, until February 8, 1946, he visited Oklahoma, Texas, Arizona, New Mexico, Nevada, Wyoming, Utah and California, and found the climate in Arkansas gave him more relief than the climate of any of these other states. So, on February 8, 1946, he left California, and arrived in Hot Springs on February 16, 1946. He secured a room at a hotel, where he was living at the time of the hearing on March 12, 1946. On February 11, 1946, his attorney filed the present suit; and the question is whether Colonel Crane was a *bona fide* resident of Arkansas for two months prior to February 11th.

Colonel Crane's testimony—while a tribute to the climate of Arkansas—does not prove that he was a *bona fide* resident of Arkansas for 60 days prior to February

11, 1946. In fact, his testimony shows the contrary: it was only after Colonel Crane had visited all these other states that he reached the conclusion to reside in Arkansas; he intended to reside where the climate best suited his asthmatic ailment; he visited these other states to decide; and *then* returned to Arkansas. So, it is clear that he did not become a *bona fide* resident of Arkansas until he returned to this state on February 16, 1946. His residence could not begin before that date. He, therefore, did not have two months' residence when he filed the present suit on February 11, 1946.

The other facts relied on by Colonel Crane to corroborate his claim for residence, as beginning on November 16, 1945, fall short of sufficient corroboration:

(a) His assessment of property in Arkansas was made on March 11, 1946, which was after the filing of this suit. See *O'Keefe* v. *O'Keefe, supra.*

(b) The fact that he was initiated into the Hot Springs lodge of the Benevolent and Protective Order of Elks on February 18, 1946, does not furnish corroboration, because there is no proof in this record as to the residence requirement of that order.

(c) The fact that, when he purchased his automobile in Hot Springs in 1945, he secured an Arkansas license tag, does not corroborate his claim of residence, because (1) the license fee is a tax for the privilege of driving on the highways, and not a tax on the property or possession thereof. (*Wiseman* v. *Madison Cadillac Co.,* 191 Ark. 1021, 88 S. W. 2d 1007); and (2) even a non-resident must procure an Arkansas license for his motor vehicle if he does not have a license in the state of his residence, etc. (See §§ 6614 and 6632, Pope's Digest, as amended by Act 72 of 1941 and Act 60 of 1945.)

To detail all of the testimony would unduly prolong this opinion, but none of it affords sufficient corroborative evidence on the question of *bona fide* residence for two months before the filing of the divorce suit. The decree of the chancery court is, therefore, reversed, and

the cause dismissed; but without prejudice to the plaintiff's right to file a new suit when he can make sufficient proof to meet the requirements as to a *bona fide* residence.

McHANEY, J., dissents.