GARDNER v. GARDNER.

5-828 286 S. W. 2d 23

Opinion delivered January 16, 1956.

[Rehearing denied February 13, 1956.]

*Cooper Jacoway,* for appellant.

*Owens, McHaney, Lofton & McHaney,* for appellee.

PAUL WARD, Associate Justice. This appeal challenges a decree of the chancery court granting a divorce to Melvyn J. Gardner. Appellant, Bernice A. Gardner, urges two grounds for a reversal: (a) Appellee had no *bona fide* residence in Arkansas, and (b) The evidence does not show three years separation as required by statute.

*Factual Background.* The parties were married in Boston in 1943. Sometime later they moved to Miami Beach, Florida where they and their four children established their residences and where Dr. Gardner engaged in the private practice of psychiatry. During the latter part of 1951, as a result of estranged marital relations, Dr. Gardner moved from their home to a hotel, and Mrs. Gardner secured a decree providing support for herself and the children. In June, 1953, Dr. Gardner gave up his private practice at Miami Beach and accepted employment with the Veterans Administration at Jefferson Barracks, Missouri. He remained there until about the first of November 1953 when he asked for and was given an assignment as psychiatrist at Fort Roots Veterans Hospital in North Little Rock, Arkansas. He arrived in North Little Rock on the 7th or 8th of November and began service at the hospital on the 9th. He began this action for divorce November 9, 1954.

(a) It is appellant's contention that the chancellor erred in holding appellee was a *bona fide* resident of this state. It is specifically urged, first, that appellee did not himself say he intended to make Arkansas his permanent home and, second, that there is no corroborating evidence or circumstance to show *animus manendi.*

While the evidence supporting the chancellor's finding on the question of residence could be more satisfactory yet we are unwilling to say such finding is against

the weight of the testimony. We think appellee did, in effect, say he intended to make Arkansas his permanent residence.

"Q. Do you have any present intention of changing your residence, Dr. Gardner?

A. I do not.

Q. Have you made any plans that are calculated to keep you here in this state for an extended period of time?

A. Yes, we have started the plan for a new group of research in projects which I estimate will take several years to complete.

Q. Do you intend to take an active part in those projects?

A. I do."

We recognize that mere declarations of intent by Dr. Gardner coupled with the fact that he had lived in this state one year when his complaint was filed do not meet the test of *bona fide* residence announced in *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585 and subsequent decisions of this court. There is however present in this case an independent and extrinsic circumstance which, we think, is sufficient to show Dr. Gardner's intention to make this state his domicile. Dr. Henry M. Hawkins, who is Chief of Continued Treatment Service at Fort Roots Veterans Hospital, testified regarding appellee:

"Q. How long have you known him?

A. Since November 9, 1953.

Q. Where was he living when you met him?

A. He was living on the grounds and still does.

Q. Did he move to the North Little Rock Veterans Hospital on or about November 9, 1953?

A. November 9, to the best of my knowledge.

Q. Has he lived there continuously since that time?

A. Continuously.

Q. Do you know whether he has made any plans to continue to live in North Little Rock?

A. We have worked out projects that will take us several years to complete.

Q. Has he indicated his desire to participate in those projects?

A. Most certainly; he and I are doing them together.

Q. Did you say they will require an extended period of time to complete?

A. Yes, sir.''

Dr. Hawkins who has been at his present location several years, admits that both he and appellee can be transferred by the government any time, yet, as stated by him, this is often the case where one is employed in private business. Every one is entitled to maintain a domicile somewhere regardless of the nature of his employment, and it is significant here, we think, that Dr. Gardner has abandoned his residence in Florida and has acquired one at no other place if not in Arkansas.

(b) We also think the evidence supports the chancellor's finding that appellant and appellee had lived apart without cohabitation for a period of three years. It was admitted by appellant and found by the Florida Court that they did not cohabit from August 28, 1951 to January 5, 1953, and appellant makes no contention that they cohabited thereafter. Appellee's father who lives in Philadelphia stated he saw his son in February 1952 and December 1953 and had talked with him over the phone at other times, and that he was sure the parties had lived separate and apart since the latter part of 1951. He also stated that he was in Miami Beach, Florida in January and February of 1952, 1953, and 1954, and had seen appellant on each occasion except the last one. Of course there is no positive corroboration which precludes the possibility that appellant and appellee may have cohabited on some one specific occasion during the three year period, but such corroboration is not required. See

*Wicker* v. *Wicker*, 223 Ark. 879, 269 S. W. 2d 311. In affirming the chancellor we recognize, and do not intend to violate, the rules against hearsay evidence, or the rule against collusive testimony in divorce cases. We do point out, in respect to testimony corroborating three years separation, that, under the circumstances disclosed here, the corroboration may be slight. There is no suggestion in this case that there exists any collusion between the parties. In dealing with a similar situation in *Kirk* v. *Kirk*, 218 Ark. 880, 239 S. W. 2d 6, we stated: "It has been said that since the object of the requirement as to corroboration is to prevent collusion, where the whole case precludes any possibility of collusion, the corroboration only needs to be very slight."

We have decided that appellant's request for an attorney fee covering this appeal should be allowed in the amount of $150.00 and it is so ordered.

Affirmed.

Justice McFADDIN dissents.

Justice MILLWEE not participating.

ED. F. McFADDIN, Associate Justice (dissenting). I am firmly of the view that the appellee did not establish a *bona fide* residence in Arkansas; and, therefore, I dissent from the majority holding. The appellee is a doctor in the Veterans Administration and is subject to being moved from place to place by the Veterans Administration just exactly like an officer in the Army is subject to being moved from place to place by the military authorities. All of this was developed in the evidence before us. In several cases we have held that a person in the armed services does not acquire a domicile in Arkansas by mere residence. See *Mohr* v. *Mohr*, 206 Ark. 1094, 178 S. W. 2d 502; and *Kennedy* v. *Kennedy*, 205 Ark. 650, 169 S. W. 2d 876.

The most that Dr. Gardner has acquired in Arkansas is mere residence. In June, 1953 he was domiciled in Florida, in which State Mrs. Gardner secured a decree for support money for herself and children. Then Dr.

Gardner entered the service of the Veterans Administration. He was at Jefferson Barracks, Missouri until the first of November, 1953, when he was transferred to Arkansas. He frankly admitted that the Veterans Administration could reassign him to some other position in some other State at any time. Where then is the *animus manendi?* To establish a domicile in this State he must have the intention of *remaining in Arkansas,* rather than yielding to the Veterans Administration if it should seek to transfer him. He has never yet testified —nor has anyone testified for him—that he would stay in Arkansas rather than be reassigned by the Veterans Administration to some other State. It was shown that he was engaged in a project at Fort Roots that he liked very much and that it would take some time to complete the project; but that evidence is far short of showing that Dr. Gardner has the firm intention of *remaining in Arkansas,* even against an order of re-assignment by the Veterans Administration. Such, I understand, is the test for domicile.

I think the majority, in affirming this case, is weakening the effect of our holding in *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, and other cases on domicile. Therefore I respectfully dissent.