BRYANT *v*. BRYANT.

5-2904                                    365 S. W. 2d 140

Opinion delivered February 25, 1963.

*Richard W. Hobbs*, for appellant.

*Holt, Park & Holt*, for appellee.

CARLETON HARRIS, Chief Justice. This is a divorce action. Appellee, Charles W. Bryant, a conductor on the Missouri Pacific Railroad, owns his home, and resides in Little Rock. Appellant, Rachel Bryant, owns her home in Hot Springs, and was living there on the date of the marriage (November 4, 1960). The parties lived together in the home of appellant until March 6, 1961. On March 8, 1961, Mrs. Bryant instituted suit for divorce against appellee in the Garland Chancery Court.[1] On April 12, the parties agreed to a temporary support order which provided that appellee should pay the sum of $100.00 per

---

[1] The complaint does not appear in the record, and accordingly the grounds for divorce are not shown.

month support, court costs, and a $100.00 fee to appellant's attorney. This order was complied with until September 6, 1961, at which time, according to the evidence, the case was to be heard finally; however, Mrs. Bryant took a nonsuit, and the court dismissed her complaint without prejudice. On March 7, 1962, Mr. Bryant instituted the present action for divorce in the Pulaski County Chancery Court, alleging that Mrs. Bryant had willfully deserted him for the period of one year without reasonable cause. Appellant filed an answer and cross-complaint wherein she denied appellee's allegation, and sought a divorce on grounds of desertion and general indignities. She further prayed that she be given her statutory rights in all properties owned by Bryant, for an award of permanent alimony, and a reasonable sum for attorney's fee and suit money.

On hearing, the court granted Mr. Bryant an absolute divorce, dismissed the cross-complaint of Mrs. Bryant, directed appellee to pay to appellant the sum of $100.00 per month as alimony and maintenance for a period of nine months, and awarded Mrs. Bryant's attorney a fee of $100.00. From the decree so entered, appellant brings this appeal. It is here contended that the court erred in granting Mr. Bryant a divorce, rather than granting the divorce to Mrs. Bryant and awarding her property rights as provided by statute.

The contentions of each of the parties are as follows:

Mr. Bryant, 58 years of age, whose first wife had died, testified he and appellant had agreed, that upon their marriage, they would temporarily live in her home in Hot Springs until she could make arrangements to sell the property, at which time she would move to Little Rock with appellee. Mr. Bryant's job headquarters with Missouri Pacific is Little Rock, as he stated, "Union Station in Little Rock." It was, of course, necessary, in order to live with his wife, that he drive back and forth from Little Rock to Hot Springs. The witness stated that after a month, he told appellant that it was time for them to move to Little Rock; that he was getting tired of driving back and forth. He testified that he constantly

asked her about selling the property, and she replied that she wanted to sell her home and move; however, she took no steps to do so. Mrs. Bryant finally, around the middle of February, listed the property with a real estate dealer.[2] Mr. Bryant stated that on two or three occasions, prospective purchasers came by to look at the property, but upon asking the sale price, received the reply from his wife that "she had not decided." He said that he made up his mind to move back to Little Rock on March 6, and so informed his wife. She inquired, "was I coming back payday and I said yes. 'I will be back payday and I want you to make up your mind by then what you are going to do.' " Payday, as reflected by the evidence, was on March 14. Appellee stated that he never did go back for the reason that when he returned from his railroad trip "a deputy sheriff met me and subpoenaed me that I had been sued for divorce." That suit was instituted by Mrs. Bryant on March 8.

Appellant testified that she did not want to get married until her property was sold, but that appellee said that he would give her all the time she needed. She stated that, inasmuch as all of her furnishings would not be needed in the Little Rock home,[3] she planned to give part to her daughter and son,[4] but that her daughter, who lived in Denver, had a nine-months-old baby, was also six months pregnant, and was not able to make the trip to Hot Springs at the time. She said that her son did get a dining room suite. Mrs. Bryant testified that appellee had told her before the marriage that he "would not gripe about driving back and forth," and she stated that he did not make any complaint after the marriage about the inconvenience of the systematic or regular journeys from Little Rock to Hot Springs.

---

[2] According to a stipulation entered into between the parties, appellant listed the property with J. N. Leeson of Hot Springs on February 15, 1961, for the sale price of $20,000.00. Mrs. Bryant also testified that she listed the property for sale about a week earlier with another real estate dealer.

[3] Mrs. Bryant's home contained 7 rooms, while the apartment in Little Rock, owned and occupied by Mr. Bryant, only contained 4 rooms.

[4] Mrs. Bryant had been married previously, but was divorced from that husband in 1945.

According to appellant, on March 6 at her home in Hot Springs, Mr. Bryant "told me he could not live with me any longer for thinking about his deceased wife, and he called her Nora." She testified that he then packed and left, stating, "I will send you money on the 15th." She mentioned two other complaints. On one occasion Mr. Bryant had called from Little Rock and informed her that he had to stay overnight in that city to see about renting an apartment, but he did not return to Hot Springs until the next night; upon being asked as to what he had been doing during that period, he answered, "It's not any of your darn business and I don't want to be asked questions or fussed at." She also testified that the following week he did not come in until 2:00 o'clock in the morning, and, when questioned as to his activities, replied that he had been out "playing."

Mrs. Callie Jones, a close friend of Mrs. Bryant's, testified that she never heard Mr. Bryant make any complaints about his wife, or the fact that appellant had not sold her property. She also testified that she was in the home a few days before March 6 (when appellee left appellant's home), and heard Mrs. Bryant state that she was ready to go to Little Rock, but Mr. Bryant refused the offer.

We think the chancellor was correct in denying a divorce to appellant. In the first place, her testimony relative to the purported statement of appellee as to his reason for leaving, is entirely without corroboration; nor is there corroboration of her testimony in regard to the two occasions when appellee did not return to the home at the proper time. Of course, even if the occurrences had been corroborated, it could hardly be said that these three isolated instances of alleged misconduct constituted such indignities as to entitle appellant to a divorce. She did not testify that her husband constantly talked about his deceased wife, but only that he mentioned it on the occasion of his leaving.

Appellee's contention of desertion would likewise be uncorroborated except for one very pertinent fact. That fact is undisputed and admitted; two days after

Mr. Bryant left the home in Hot Springs, appellant instituted suit for divorce. It seems strange, if Mrs. Bryant really intended to move to Little Rock with her husband, that she would have filed suit almost immediately, particularly inasmuch as the recited evidence shows that the difficulties between the parties were of a minor nature. It would certainly appear that if appellant had a genuine desire to live with appellee, she would not have instituted the suit so quickly.

Nor does she cite compelling reasons for failure to accompany her husband to his home. After all, the sale of the property could have been adequately handled by a real estate dealer while Mrs. Bryant was in Little Rock with her husband; upon being advised that a sale was ready for consummation, or that her daughter was ready to make the trip from Denver, appellant could have returned to her home to complete details. It is, of course, noticeable that the property was not even listed for sale until more than three months after the marriage.

The transcript contains a copy of the order entered by the Garland Chancery Court on September 6. That order reads as **follows:**

"On this day comes the plaintiff, by her Solicitor, Richard W. Hobbs, Esq., and moves the Court to dismiss this cause of action without prejudice;

"And the Court being well and sufficiently advised in this matter doth order, adjudge and decree that this cause of action be, and same is hereby dismissed without prejudice; *and the restraining order issued on March 8th, 1961,*[5] *be, and the same is hereby vacated.*"

While the record does not contain the original order, and the italicized portion could possibly have reference to restraining appellee from disposing of property, or withdrawing funds from a bank, etc., it more likely appears (since specific property or money is not mentioned in the testimony) that the purpose of the restraining order was to prevent Mr. Bryant from going about appellant. Under such circumstances, he could not, of

---

[5] Emphasis supplied.

course, have returned to the home without risk of a contempt citation. Be that as it may, we think that Mrs. Bryant could not have more forcefully demonstrated her intention to remain in her own home in Hot Springs (instead of going to Little Rock with appellee), than by instituting the suit for divorce within two days after Mr. Bryant left the house.

In *Dobson* v. *Dobson* (not in Arkansas Reports) 89 S. W. (2d) 932, this court stated,

"It is true, of course, that the husband has the right to establish a home in such place as his business necessities may require and that the wife, if she willfully refuses to make her home with him at such place, is guilty of desertion."

See also *Bateman* v. *Bateman*, (Ill.) 85 N. E. 2d 196. Certainly, "business necessities" dictated that Mr. Bryant maintain his residence in Little Rock, and we are unable to say that the Chancellor's finding that Mrs. Bryant deserted her husband is against the preponderance of the evidence.

It likewise follows that the court's action in dismissing the cross-complaint was proper.

The decree is accordingly affirmed.

Appellant asks for a reasonable attorney's fee as compensation for services rendered in taking this appeal, together with an amount sufficient to cover costs. In accordance with the holding in numerous cases, though the wife has not prevailed in this litigation, the request is granted. See *Gardner* v. *Gardner*, 225 Ark. 828, 286 S. W. 2d 23. We think, under the circumstances, that an additional fee for appellant's attorney should be allowed in the amount of $100.00, together with her costs.

It is so ordered.

MR. JUSTICE HOLT not participating.